# Illinois Official Reports

## Appellate Court

<hr>

### *People v. Niffen*, 2018 IL App (4th) 150881

<hr>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH L. NIFFEN, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket Nos. 4-15-0881, 4-15-0882 cons. |
| Filed | October 31, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Adams County, Nos. 11-CF-648, 12-CF-175; the Hon. Robert K. Adrian, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Jacqueline L. Bullard, and Zachary A. Rosen, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Gary L. Farha, State's Attorney, of Quincy (Patrick Delfino, David J. Robinson, and Kathy Shepard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE CAVANAGH delivered the judgment of the court, with opinion.<br>Justices DeArmond and Turner concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant, Joseph L. Niffen, is serving a total of 39½ years' imprisonment for unlawful possession of a methamphetamine precursor (720 ILCS 646/20(a)(2)(E) (West 2012)) and anhydrous ammonia (720 ILCS 646/25(a)(1) (West 2010)). He appeals the summary dismissal of his *pro se* petition for postconviction relief (see 725 ILCS 5/122-2.1(a) (West 2014)). In addition, in his brief, he challenges the imposition of fines by the Adams County circuit clerk and the clerk's retention of $1901 of his bond money to cover those purported fines. We find arguable merit in one of the claims of his petition, but we lack subject-matter jurisdiction to review the clerk-imposed fines or the retention of the bond money. Therefore, we merely reverse the summary dismissal and remand this case for further postconviction proceedings.

¶ 2                                       I. BACKGROUND

¶ 3 On July 19, 2012, defendant entered a negotiated guilty plea to one count of unlawful possession of a methamphetamine precursor (720 ILCS 646/20(a)(2)(E) (West 2012)) in Adams County case No. 12-CF-175 and one count of unlawful possession of anhydrous ammonia (720 ILCS 646/25(a)(1) (West 2010)) in Adams County case No. 11-CF-648. The trial court sentenced him to consecutive terms of 15 years' imprisonment for the methamphetamine precursor and 24½ years' imprisonment for the anhydrous ammonia.

¶ 4 The written sentencing order also included the following: (1) "Court Costs, VCVA [(Violent Crime Victims Assistance)], and Penalties," with no listed monetary denominations; (2) a "Crime Lab fee of $100.00" in both cases; (3) an "Assessment (per Cannabis/Controlled Substances Act) of $3000/$1000"; (4) $100 for "Meth"; (5) $5 for "Spinal Cord"; and (6) $1325 restitution.

¶ 5 Also, in "Payment Status Information" sheets in both cases, the circuit clerk imposed the following assessments: $50 for "Court," $100 for "Violent Crime," $10 for "Medical Costs," $10 for "Lump Sum Surcharge," $15 for "Child Advocacy Fee," and $5 for "State Police Ops."

¶ 6 Defendant never filed a motion to withdraw his guilty pleas. Nor did he take a direct appeal.

¶ 7 On July 13, 2015, defendant filed a *pro se* petition for postconviction relief. One of his claims was that on approximately July 26, 2012, he wrote defense counsel a letter requesting that he file a motion to withdraw his guilty pleas. (As we already have noted, no such motion ever was filed.) In a "Sworn Affidavit," which was attached to his petition, defendant stated:

> "1. That while housed at the Graham Correctional Center I sent a letter to my retain [*sic*] counsel requesting that he fil[e] a [m]otion to withdraw my plea. That in the body of my letter I complained about the length of a sentence I had received[,] telling my [a]ttorney that I would have one foot in the graveyard by the time I was released from prison. That also I told my [a]ttorney that the factual basis information was inaccurate and[,] based upon my prior guilty pleas[,] I thought it would be grounds for withdrawing my plea."

¶ 8 On October 2, 2015, by written order, the trial court summarily dismissed the postconviction petition. The court reasoned: "The *** issue concerning counsel's failure to

- 2 -

file a timely motion to withdraw the guilty plea is without merit because [defendant] could have filed the motion *pro se* and been appointed counsel. Further, the motion[,] even if filed[,] would have been without merit."

¶ 9                                 II. ANALYSIS

¶ 10                  A. The Three Stages of a Postconviction Proceeding

¶ 11     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2014)) provides a remedy for defendants who have suffered a substantial violation of their constitutional rights at trial. *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). In a noncapital case, the Act contemplates that a postconviction proceeding will advance through as many as three stages to determine whether such a constitutional violation occurred. *Id.* at 244.

¶ 12     At the first stage, the trial court independently reviews the postconviction petition and decides, within 90 days after its filing, whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2014). If the court decides that the petition is frivolous or patently without merit—or, in other words, that it lacks any "arguable basis either in law or in fact" (*People v. Hodges*, 234 Ill. 2d 1, 17 (2009))—the court will summarily dismiss the petition in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2014). That is what the court did in the present case.

¶ 13     If, within 90 days after the filing of the petition, the trial court does not summarily dismiss it, the petition will advance to the second stage. Defense counsel will be appointed, if necessary (see 725 ILCS 5/122-4 (West 2014)), and the State will move to dismiss the petition, or else the State will answer it (see *id.* § 122-5). The question at the second stage is "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *Edwards*, 197 Ill. 2d at 246. In answering that question, the trial court takes as true "all well-pleaded facts that are not positively rebutted by the trial record." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). If no showing of a substantial constitutional violation is made, the court dismisses the petition. *Edwards*, 197 Ill. 2d at 246.

¶ 14     Alternatively, if the petition and its attached documentation make a substantial showing of a constitutional violation, the petition will advance to the third stage for an evidentiary hearing. *Id.* At the third stage, the petition and its accompanying documentation no longer are taken to be true. Instead, the court resolves any questions of fact and determines credibility, as in a bench trial. *Pendleton*, 223 Ill. 2d at 473. The defendant bears the evidentiary burden of making a substantial showing of a constitutional violation. *Id.*

¶ 15                      B. The First-Stage Issue of Whether Defendant's
                     *Pro Se* Petition Is Frivolous or Patently Without Merit

¶ 16     In his petition for postconviction relief, defendant claimed that defense counsel rendered ineffective assistance by ignoring a letter from him in which he requested defense counsel to file a motion to withdraw his guilty pleas. For two reasons, the trial court concluded that this claim lacked any potential merit. First, defendant "could have filed the motion *pro se* and been appointed counsel." Second, "the motion[,] even if filed[,] would have been without merit." The State agrees with defendant, and so do we, that those two reasons are inconsistent with *Edwards*, 197 Ill. 2d 239.

¶ 17    In *Edwards*, the defendant alleged in his *pro se* postconviction petition that, soon after pleading guilty, he requested defense counsel to file an appeal and that defense counsel failed to do so. *Id.* at 242. Because it would have been impossible to pursue an appeal without first filing a motion to withdraw the guilty plea (see Ill. S. Ct. R. 604(d) (eff. Aug. 1, 1992)), the petition was construed as additionally criticizing defense counsel for failing to file a motion to withdraw the guilty plea (*Edwards*, 197 Ill. 2d at 242). The trial court summarily dismissed the petition because it stated no *grounds* for withdrawing the guilty plea and, therefore, failed to show that the defendant suffered any prejudice from defense counsel's allegedly deficient performance. *Id.* The supreme court overturned the summary dismissal because no attorney had ever reviewed the plea proceedings for error and it would have been unreasonable to require the *pro se* defendant to perform such a review and provide legal grounds for withdrawing his guilty plea. *Id.* at 257. Until an attorney was appointed, who would "be able to consult with [the] defendant regarding his claim and explore in more detail the factual and legal ramifications of [the] claim," it was premature "to conclude that [the] defendant's claim of ineffective assistance of counsel [was] so completely lacking in substance that it [was] frivolous or patently without merit." *Id.*

¶ 18    If, in *Edwards*, a defendant who accused his defense counsel of ignoring his request to file a motion to withdraw his guilty plea did not have to provide, at the first stage of the postconviction proceeding, any grounds for withdrawing his guilty plea, it must follow that the same defendant, earlier, in the original proceeding, did not have to file a *pro se* motion to withdraw his guilty plea, since such a motion would have had to provide grounds for withdrawing his guilty plea (see Ill. S. Ct. R. 604(d) (eff. Aug. 1, 1992)). Therefore, contrary to the trial court's rationale in the present case, the fact that defendant never filed a *pro se* motion to withdraw his guilty pleas did not invalidate his claim that defense counsel rendered ineffective assistance by disregarding his request to file a motion to withdraw his guilty pleas.

¶ 19    It would have been, after all, understandable if defendant had relied on defense counsel to comply with his request and had refrained from filing such a motion himself, since we prohibit defendants from filing *pro se* motions while they are represented by counsel, except posttrial motions alleging ineffective assistance, and we instruct trial courts to reject such attempts at "hybrid representation." *People v. Stevenson*, 2011 IL App (1st) 093413, ¶ 30. (Presumably, defendant did not intend to ask his defense counsel to argue his own ineffective assistance.) By accepting the trial court's rationale, we would penalize defendant for complying with our own prohibition.

¶ 20    Although, as the State concedes, the trial court's *reasons* for rejecting this claim at the first stage were erroneous, the State reminds us that we should review the summary dismissal *de novo*, without any deference to the court's reasoning, and that if we can find in the record any valid basis for the summary dismissal, we should affirm it. See *Edwards*, 197 Ill. 2d at 247; *People v. Relwani*, 2018 IL App (3d) 170201, ¶ 20, *appeal allowed*, No. 123385 (May 30, 2018). The State argues the petition deserved to be summarily dismissed for noncompliance with section 122-2 of the Act (725 ILCS 5/122-2 (West 2016)). Section 122-2 required that the petition "have attached thereto affidavits, records, or other evidence supporting its allegations or *** state why the same [were] not attached." *Id.* Although defendant attached to his *pro se* petition an "affidavit," in which he averred that he had sent defense counsel a letter requesting that he file a motion to withdraw his guilty pleas, and

although the lack of a notarization on the "affidavit" did not make the petition frivolous or patently without merit (see *People v. Allen*, 2015 IL 113135, ¶ 34), the State disputes that that the "affidavit" satisfied section 122-2. The State argues that to satisfy section 122-2, defendant additionally had to attach to his petition a copy of the letter he claimed to have sent to defense counsel or that, alternatively, he had to explain why a copy of the letter was not attached. In support of its argument, the State cites *People v. Delton*, 227 Ill. 2d 247 (2008), and *People v. Anderson*, 287 Ill. App. 3d 1023 (1997). Actually, neither of those cases supports the State's argument.

¶ 21    In *Delton*, the defendant was serving a sentence of imprisonment for the aggravated battery of some police officers. *Delton*, 227 Ill. 2d at 249. He claimed, in his *pro se* postconviction petition, that his trial counsel had rendered ineffective assistance by failing to investigate his allegation that the police officers had been harassing him for a long time, thereby causing him, during the traffic stop in question, to reasonably believe he needed to defend himself from physical aggression by them. *Id.* at 251. The defendant attached to his petition excerpts from the transcript of his trial—and nothing else. *Id.* at 255-57. He did not attach his own affidavit. *Id.* at 257. The excerpts from the transcript, standing alone, had no tendency to corroborate the allegation, in his *pro se* petition, that he told trial counsel before the trial that the police officers had been harassing him. *Id.* The problem in *Delton* was that the trial transcript was the only thing attached to the defendant's petition and the transcript, by its terms, corroborated nothing. The supreme court never suggested that an affidavit by the defendant, if he had provided one, would have been insufficient as corroboration.

¶ 22    The defendant in *Delton* argued to the supreme court that it was readily inferable why his petition lacked corroborative documentation: a subpoena was necessary to obtain police disciplinary records. *Id.* While agreeing that a subpoena was necessary to obtain such records, the supreme court pointed out that this was no excuse for the defendant because he himself was the one who had made the complaint against the police officers. *Id.* at 257-58. "Because [the defendant] filed the charges, he could easily have supported his petition with a copy of the complaint he filed against [the police officers] *or with the specifics about the filing of that complaint* if, in fact, he had filed one." (Emphasis added.) *Id.* at 258. Thus, according to the supreme court, "the specifics about the filing of that complaint"—meaning, apparently, an affidavit by the defendant setting forth the specifics—would have served just as well as "a copy of the complaint." *Id.*

¶ 23    In *Anderson*, the defendant alleged in his *pro se* postconviction petition that about three weeks after pleading guilty, he sent his attorney a letter stating he wanted to withdraw his guilty plea and that counsel never replied. *Anderson*, 287 Ill. App. 3d at 1026. "No affidavits or supporting documents were attached to the petition." *Id.* We do not see anywhere in *Anderson* where the First District stated that the corroborative documentation *had* to be a copy of the letter that the defendant allegedly had sent to defense counsel. Rather, the First District stated that the petition "lack[ed] *any* supporting documents, *such as* the alleged letter written by [the] defendant." (Emphases added.) *Id.* at 1032. By observing that "the instant defendant did not attach any *affidavits or* any supporting documents to his petition," the First District seemed to imply that an affidavit by the defendant would have sufficed. (Emphasis added.) *Id.*

¶ 24    In the present case, not only in his petition but also in his affidavit, defendant describes the substance of his letter to defense counsel, and he states he sent the letter to defense

counsel and that defense counsel never responded. The State objects that the petition and the affidavit lack an indispensable supporting document: a copy of the letter. But the purpose of supporting documentation pursuant to section 122-2 is to "show[ ] that the verified allegations [of the petition] are capable of objective or independent corroboration." *People v. Collins*, 202 Ill. 2d 59, 67 (2002). A purported copy of the letter would not have served that purpose. It would have been just another writing by defendant, like his petition and his affidavit. A purported copy of the letter would not have been "objective or independent corroboration" that he actually sent the letter to defense counsel and that defense counsel received it. *Id.* Only defense counsel could corroborate that he received the letter. See *People v. Rogers*, 372 Ill. App. 3d 859, 867 (2007) ("Here, it can easily be inferred that [the] defendant could not attach her correspondence to the petition because any correspondence would have been in the possession of her attorney and thus not readily available to [the] defendant."). Therefore, we are unconvinced by the State's argument that the corroboration requirement in section 122-2 justified the first-stage rejection of defendant's claim that defense counsel rendered ineffective assistance by disregarding his request to file a motion to withdraw his guilty pleas.

¶ 25   Because the Act does not permit the partial summary dismissal of a postconviction petition, we need not address defendant's additional claim that defense counsel rendered ineffective assistance by representing him while under a conflict of interest. See *People v. Romero*, 2015 IL App (1st) 140205, ¶ 27 ("If a single claim in a multiple-claim postconviction petition survives the summary dismissal stage ***, then the entire petition must be docketed for second-stage proceedings[,] regardless of the merits of the remaining claims in the petition."); *People v. White*, 2014 IL App (1st) 130007, ¶ 33 ("We have no need to address any of the other claims in the petition because partial summary dismissals are not permitted during the first stage of a postconviction proceeding.").

¶ 26                              C. Clerk-Imposed Fines and Bond Money

¶ 27   Defendant complains of fines that the circuit clerk, as distinct from the trial court, imposed upon him in the "Payment Status Information." Although a circuit clerk can have statutory authority to impose fees, a circuit clerk never has authority to impose fines because a circuit clerk is not a judge and imposing fines as part of a sentence is exclusively a judicial act. *People v. Smith*, 2014 IL App (4th) 121118, ¶ 18.

¶ 28   The trouble is, the supreme court recently held as follows:

> "The appellate court is constitutionally vested with jurisdiction to review final judgments entered by circuit courts. The recording of a fine is a clerical, ministerial function and is not a judgment—void or otherwise. Therefore, the improper recording of a fine is not subject to direct review by the appellate court." *People v. Vara*, 2018 IL 121823, ¶ 23.

In short, the "Payment Status Information" is not part of the trial court's judgment. Therefore, we lack jurisdiction to review it. See *id.* And, in fact, appellate defense counsel candidly admits as much in a supplemental brief, which he filed after the issuance of *Vara* ("If *Vara* is not modified or changed upon rehearing, then the State's position that this court lacks jurisdiction to vacate fines that were improperly imposed by the circuit court clerk would be correct.").

¶ 29 Even so, defendant argues, "a sentencing court's improper delegation of authority to the clerk to [impose a fine]—purporting to give the clerk authority he or she does not have—is an issue that may still be challenged." In this context, defendant refers to the trial court's imposing upon him a violent crime victims assessment in an unspecified amount and leaving it to the circuit clerk to specify the amount. But this issue has nothing to do with the judgment that defendant appeals. He appeals the summary dismissal of his postconviction petition, which contains no mention of the violent crime victims assessment. "A notice of appeal confers jurisdiction on the reviewing court to consider only the judgments or pertinent parts specified in the notice." *People v. Patrick*, 2011 IL 111666, ¶ 21; see also *People v. Smith*, 228 Ill. 2d 95, 104 (2008). Because the violent crime victims assessment and the retention of defendant's bond money are extraneous to the summary dismissal order, which defendant specifies in his notice of appeal, we lack subject-matter jurisdiction to consider those issues. See *Patrick*, 2011 IL 111666, ¶ 21; *Smith*, 228 Ill. 2d at 104.

¶ 30                                      III. CONCLUSION
¶ 31    For the foregoing reasons, we reverse the trial court's judgment and remand this case for further proceedings.

¶ 32    Reversed and remanded.